NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HARRY DUNLEAVY, | |
| Plaintiff, | Civil Action No. 04-122(KSH) |
| v. | **OPINION** |
| MOUNT OLIVE TOWNSHIP, MOUNT OLIVE BOARD OF EDUCATION, GEORGE JOHNSON, MARILYN PERSICO, MARTHA HATCH, J. FRANK VESPA-PAPALEO and LORRAINE WATSON, | |
| Defendants. | |

**Katharine S. Hayden, U.S.D.J.**

In this employment case, plaintiff has sued for relief under the Age Discrimination in Employment Act ("ADEA") and New Jersey Law Against Discrimination ("NJLAD"). Before the Court is a motion for summary judgment brought by defendants Mount Olive Board of Education, Marilyn Persico, and Martha Hatch (collectively "defendants"), who assert that

-1-

plaintiff's age discrimination claims should be dismissed because he has failed to make out a *prima facie* case of discrimination, or, alternatively, has failed to demonstrate that defendants' proffered legitimate nondiscriminatory reason for not hiring him was pretextual.

**Background and Procedural History**

The following factual background is established by the record, consisting of plaintiff's deposition and certification with attached exhibits, defendant Martha Hatch's certification with attached exhibits, the pleadings, and both parties' statements of material facts submitted pursuant L. Civ. R. 56.1.

On June 4, 2002, plaintiff applied for a teaching position in the Mount Olive High School mathematics department, which had an opening for the 2002-2003 school year, by sending a cover letter, resume and a copy of his teaching certification to the Mount Olive Board of Education. Plaintiff was 60 years old, and his resume reflected that he was at least in his mid-to-upper fifties. His credentials showed he had a Master's Degree in Mathematics and Education and teaching certifications for both the State of New Jersey and the State of New York; he published several articles; he was currently employed as an adjunct professor of Mathematics at Sussex County Community College; and he had worked as a mathematics teacher from 1968 to 1977 in New York. Plaintiff was asked to submit a writing sample and invited to the school for an initial interview.

Marilyn Persico, former Principal of Mount Olive High School, and Martha Hatch, former Chair of the Mathematics Department, interviewed eight applicants for the position, including plaintiff. After the interview, plaintiff and two other candidates were given the opportunity to present demonstration lessons to a classroom of students. The candidates were

able to choose the subject for the lesson from any of the topics covered in the curriculum, and had about one week to prepare. Persico and Hatch both observed these demonstration lessons and evaluated each applicant. With regards to plaintiff's demonstration lesson, Principal Persico only briefly attended. Kelly Lawrence, who was 24 years old, was offered and accepted the position..

Due to a personal tragedy, Lawrence had to give up the teaching position just prior to the start of the 2002-2003 school year. Principal Persico and Department Chair Hatch re-opened their search for a mathematics teacher, and on or about August 30, 2002, Department Chair Hatch inquired into plaintiff's employment status. The parties dispute what was said during this conversation, the type of position defendants offered him, and how plaintiff responded. Plaintiff alleges that Hatch offered him a permanent position and told him that the Board of Education would get back to him within a day or so. (Deposition of Harry Dunleavy, at 38:13 to 38:21.) Hatch claims she only offered a long-term temporary position, and that in response plaintiff was rude and told her that he would only take a job if it was permanent. (Certification of Martha Hatch, ¶¶ 31, 32.) Ultimately, on or about October 28, 2002, Elizabeth Ditchek, who was 24 at the time, was offered and accepted a permanent position as a teacher in the mathematics department at Mount Olive High School.

Plaintiff filed a complaint with the New Jersey Division of Civil Rights and the Equal Employment Opportunity Commission, both of which found no probable cause and dismissed the action. Thereafter plaintiff, acting *pro se*, commenced this lawsuit. After amending his complaint several times and retaining counsel, plaintiff dismissed all claims against defendant Mount Olive Township; all civil right claims; and all claims against individual defendants

George Johnson, Frank Vespa-Papaleo and Lorraine Watson. The summary judgment motion is directed to the remaining claims, which are age discrimination claims asserted against the Mount Olive Board of Education, Principal Persico, and Department Chair Hatch.

**Standard of Review**

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact" such that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute will not defeat a summary judgment motion unless the dispute is both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). At the summary judgment stage, the Court's "function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In so doing, the Court must construe the facts and all inferences that reasonably could be drawn therefrom in a light most favorable to the non-moving party. Bailey v. United Airlines, 279 F.3d 194, 198 (3d Cir. 2002).

**Discussion**

The parties have analyzed the issues according to the burden-shifting framework originally set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and the Court agrees this three-step process is appropriate in assessing whether plaintiff's age discrimination claims survive summary judgment.[1] See Reeves v. Sanderson Plumbing

---

[1] The Court will analyze plaintiff's age discrimination claims under NJLAD and ADEA together in one discussion because relevant legal principles applied to NJLAD claims are the same as those applicable under the ADEA. See Keller v. Orix Credit Alliance Inc., 130 F.3d 1101, 1114 n. 5 (3d Cir. 1997); McKenna v. Pacific Rail Serv., 32 F.3d 820 (3d Cir.1994) (predicting New Jersey Supreme Court would follow Hicks ); Grigoletti v. Ortho Pharmaceutical Corp., 570 A.2d 903 (N.J. 1990) (McDonnell Douglas scheme applies under NJLAD); Erickson v. Marsh & McLennan, 569 A.2d 793, 798 (N.J. 1990) (analyzing sex discrimination pursuant to

Products, Inc., 530 U.S. 133, 142 (2000) (applying McDonnell Douglas test in a lawsuit arising under the ADEA); Keller v. Orix Credit Alliance Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (same).

Under the familiar analysis, plaintiff must first establish a *prima facie* case of discrimination, and if he does, the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). Once the employer satisfies its burden of articulating a legitimate, nondiscriminatory reason for its action, "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual." Id. Throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff. Id.

A.   *Prima Facie* Showing

Under this factual scenario, plaintiff must show the following to satisfy his initial burden:

(1) that he belongs to a protected class;
(2) that he applied for and was qualified for the job;
(3) that despite his qualifications, he was rejected; and
(4) that the employer either ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination or continued to seek applicants from among those having the plaintiff's qualifications.

See, e.g., Barber v. CSX Distribution Services, 68 F.3d 694, 698 (3d Cir. 1995). There is no dispute that plaintiff was over forty years of age; defendants rejected his application for a teaching position; and defendants offered the position to two younger applicants. Defendants assert, however, that plaintiff cannot prove he was qualified for the vacant mathematics position

---

NJLAD under the McDonnell Douglas framework); Burke v. Township of Franklin, 619 A.2d 643 (N.J. Super. App. Div. 1993) (looking to ADEA in interpreting NJLAD).

at Mount Olive High School simply by pointing to his credentials articulated in his resume, contending these "basic" credentials do not automatically qualify plaintiff for a teaching position. They point out that the hiring process involves evaluating candidates through interviews and demonstration lessons and that recent public high school teaching experience is a consideration as well. (Hatch Cert., ¶¶ 7-9.)

There is no hard and fast rule covering what exactly a plaintiff must show in order to establish a McDonnell Douglas *prima facie* case. Fasold v. Justice, 409 F.3d 178, 185 n. 10 (3d Cir. 2005). Here, plaintiff argues he was qualified for the teaching position because he is certified to teach in the State of New Jersey; completed his Master's Degree in Mathematics and Education; and had recent teaching experience as an adjunct professor at Sussex Community College. (Pltf's Opposition, at 11-12.) For purposes of meeting the relatively minimal requirements of a *prima facie* showing, the Court finds these credentials make plaintiff "qualified," a finding bolstered by defendants' decision to bring him in for an initial interview, ask him to submit a writing sample, and invite him to give a demonstration lesson.

B.  Defendants' Proffered Reason

Defendants assert a legitimate, nondiscriminatory reason for plaintiff's rejection, to wit that they did not hire plaintiff over the other candidates because their demonstration lessons dwarfed his by comparison. (Defts' Brief, at 14.) Through Department Chair Hatch's affidavit, defendants assert that plaintiff's demonstration was only "mediocre"; and that he was unable to attract the students' interest even though he had adequate preparation time and could choose the subject matter for his lesson. (Hatch Cert., ¶¶ 20-24.) They describe the demonstration lessons given by Lawrence and Ditchek as lively and creative, stimulating student interaction. (Hatch

Cert., ¶¶ 26, 36.) Under the analysis, defendants enjoy a "relatively light burden" in articulating a legitimate, nondiscriminatory reason for their action. Fuentes, 32 F.3d at 763. Here, the Court concludes defendants have met their burden of production. Because neither side suggests there was any direct evidence of discrimination, this case turns on whether plaintiff has adduced evidence of pretext such that a reasonable factfinder could decide in his favor on his allegations that he was not hired because of his age.

The Third Circuit has recognized two ways of demonstrating pretext. A plaintiff can present evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication." Fuentes, 32 F.3d at 762. Or a plaintiff can present evidence that "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Id.

Under the first prong – creating sufficient doubt as to the proffered rationale – the plaintiff must present evidence that suggests defendants' decision "was so plainly wrong that it cannot have been the employer's real reason." Keller, 130 F.3d at 1109. It is not enough for a plaintiff to merely submit evidence tending to show that defendants' decision was wrong or a mistake. He/she must "demonstrate such weaknesses, implausibilities, inconsistences, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy credence." Id. This rigorous standard is placed on a plaintiff because "federal courts are not arbitral boards ruling on the strength of [the employment decision]. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [age discrimination]." Id.

(citing <u>Carson v. Bethlehem Steel Corp.</u>, 82 F.3d 157, 159 (7th Cir.1996)).

The crux of this plaintiff's argument is that he was the superior candidate because he taught mathematics at Sussex County Community College and had a Master's Degree in Mathematics and Education and a teaching certificate from the State of New Jersey.  (Pltf's Opposition, at 8.)  He also seizes on the fact he was invited to give a demonstration lesson after his initial interview and although not initially offered a position, defendants later inquired into his employment status.  Given these predicates, plaintiff appears to be saying that defendants' choice of someone else had to be the result of age discrimination.

But plaintiff ignores the practical reality that the invitation to give a demonstration lesson did not assure victory.  The demonstration lesson was worth 60% of the evaluation process, and defendants' assessment was that plaintiff's performance was only "mediocre."  (Hatch Cert., ¶ 11.)  Defendants concluded that plaintiff's inability to manage a demonstration lesson on a subject that he admittedly loves "spoke volumes about his qualifications for a permanent teaching position."  (Dunleavy Dep., at 35:18 to 36:2; Hatch Cert., ¶ 24.)  In contrast, Hatch described Lawrence's demonstration lesson as outstanding because she interacted with the students throughout the lesson and taught at the appropriate level of difficulty.  (Hatch Cert.,  ¶¶ 25, 26.)  As for Ditchek's lesson, Department Chair Hatch asserted it was varied, interesting and challenging– "displaying her ability to interact with the students and keep them engaged in the subject matter."  (<u>Id.</u> at ¶ 36.)

Plaintiff attempts to counter defendants' approval of Ditchek's demonstration lesson by attacking her credentials– she has a "scant background of only 21 credits in Mathematics and no teaching experience."  (First Amended Complaint, dated March 4, 2004, ¶ 5.)  However plaintiff

sets forth no evidence to support this allegation and admits he has no personal knowledge of Ditchek's teaching ability. (Dunleavy Dep., at 42:8 to 42:13.) Further plaintiff asserts Ditchek has an insufficient amount of credits in mathematics, making her unqualified to be in a classroom on her own. (Id. at 58:20 to 58:23.) But acknowledges, in the same deposition testimony, that there is such a thing called the "alternate route" program that allows individuals to teach in the classroom while pursuing their teacher certification. (Id. at 61:4 to 61-6; 62:21 to 63:22.) While defendants do not provide the Court with the particulars of Ditchek's resume, Hatch asserts that she had outstanding credentials, "including recent teaching experience and a strong mathematics and science background." (Hatch Cert., ¶ 35.) In the face of this, plaintiff's evidence does not indicate that defendants' "mediocre" rating was wrong, or that his qualifications buried the other candidates, such that defendants' proffered reason "was so plainly wrong that it cannot have been the employer's real reason." Keller, 130 F.3d at 1109.

      Plaintiff argues, as a basis for pretext, "that although defendants wanted to avoid the injustice of hiring an unqualified teacher, they still inquired into his employment status despite the fact that they considered him unqualified." (Pltf's Opposition, at 7; citing Certification of Harry Dunleavy, ¶ 16.) The Court recognizes there is some disagreement among the parties as to whether the inquiry Hatch made of plaintiff after Lawrence had to decline was an offer for a permanent position, and that they disagree about how plaintiff responded. But in the end, this dispute does not preclude the granting of summary judgment because it is not "material." At best, defendants' subsequent inquiry about plaintiff's availability supports plaintiff's *prima facie* showing that he was qualified for the position they ultimately decided to offer to someone else. Critically, plaintiff fails to indicate how this contact during the search to replace Lawrence is

inconsistent with defendants' proffered explanation that Lawrence and Ditchek were hired over plaintiff because they were the better candidates.

Pursuant to the Fuentes test, plaintiff can survive summary judgment if he brings forth evidence that "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Keller, 130 F.3d at 1111.

The Third Circuit has provided the following explanation of this prong: "For example, the plaintiff may show that the employer has previously discriminated against [the plaintiff], that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." Jones v. School District of Philadelphia, 198 F.3d 403, 413 (3d Cir. 1999) (citing Simpson v. Kay Jewelers, Division of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998)).

In this light, the Court examines plaintiff's contentions that defendants' use of a "subjective standard" in evaluating the candidates supports an inference that age discrimination was their motivating factor in not hiring him. (Pltf's Opposition, at 2.) Defendants describe the criteria they used in determining whether a particular candidate would be hired as follows: positive interview– 20%; writing sample– 5%; demonstration lesson– 60%; interview with Principal– 5%; and interview with Superintendent– 5%. (Hatch Cert., ¶ 11.) Hatch explains that during the demonstration lesson candidates are graded on their interaction with, and response to, the students, and their knowledge of mathematics and clarity with which they teach their chosen subject. (Id., ¶ 10.)

For plaintiff to use defendants' hiring criteria to infer discrimination was more likely

than not a motivating fact under, he must "point to evidence from which a factfinder could reasonably infer that the plaintiff satisfied the criterion identified by the employer or that the employer did not actually rely upon the stated criterion." Simpson, 142 F.3d at 647.  Plaintiff has not pointed to any evidence showing that defendants did not rely on this criteria in choosing candidate for the position.  Nor does he offer facts or legal authority directly challenging the criteria as discriminatory.  It is not the function of this Court to second-guess managerial decisions concerning the relative qualifications of competing applicants and subjectively weigh factors it considers important.  Keller, 130 F.3d at 1109; Simpson, 142 F.3d at 647.

Plaintiff seeks to use Mount Olive school district's hiring profile for the 2002-2003 school year as evidence that defendants disproportionately hire younger teachers– showing that plaintiff's age was a motivating factor.  (Pltf's Opposition, at 4.)  Based on the hiring profile, 10 out of the approximately 72 teachers employed by defendants were hired in their fifties, and no individual was hired who was 60 or over.  Of these 10 individuals, none was hired for a position in the mathematics department.  (Dunleavy Cert., ¶ 23; Exhibit C.)  Defendants do not dispute this statistic.  But they point out that overall the high school has a pattern of hiring teachers of all ages because in 2002 it hired 9 teachers in their forties, and 10 teachers in their fifties.  (Defts' Brief, at 16.)  Further defendants argue that overall they employ 140 individuals in their fifties and 9 individuals in their sixties.  (Hatch Cert., ¶ 40.)  In retort plaintiff asserts that these numbers show that while overall Mount Olive High School may have a history of hiring teachers of all ages, this does not apply to the mathematics department, and the "alleged discrimination was done by those only for hiring math teachers."  (Pltf's Opposition, at 14.)

Statistical evidence of an employer's pattern and practice with respect to hiring may be

relevant to a showing of pretext. Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 542 -543 (3d Cir. 1992) (citing McDonnell Douglas, 411 U.S. at 805). But the data presented by plaintiff is nothing more than a snapshot of defendants' hiring profile. Significantly, plaintiff does not provide any analysis of either the qualified applicant pool or the flow of qualified candidates over previous hiring years. Cf. Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 650-51 (1989). Because no conclusion can be drawn from plaintiff's raw numbers on under-representation, "they are not probative of defendants' alleged discriminatory motive." See Ezold, 983 F.3d at 543 (citing Villanueva v. Wellesly College, 930 F.2d 124, 131 (1st Cir. 1991) (statistics showing small percentage of minority faculty members inadequate absent some other indication of relevance); Molthan v. Temple University of Communications Systems, 778 F.2d 955, 963 (3d Cir. 1985) ("Because the considerations affecting promotion decisions may differ greatly from one department to another, statistical evidence of a general under representation of women in the position of full professor adds little to a disparate treatment claim")). And accordingly, the Court does not consider them material to plaintiff's age discrimination claims.

**Conclusion**

Plaintiff has made bald allegations of age discrimination without anchoring them with specific facts that tend to prove discrimination and thereby rebut defendants' proffered nondiscriminatory reason. See Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (stating that a party resisting a summary judgment motion "must set forth specific facts showing that there is a genuine issue for trial" and "cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions"). The Court has nonetheless carefully examined the applicable law and those facts that plaintiff does present, viewed in their best light. The Court concludes that

defendant is entitled to summary judgment on plaintiff's federal age discrimination claim.  His state law claim, which rests on identical legal authority and analysis, falls with the ADEA claim, see footnote 1 above, and accordingly defendants' motion for summary judgment is granted in its entirety.


July 29, 2005                                             s/ Katharine S. Hayden
                                                          **Katharine S.  Hayden, U.S.D.J.**